IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

ZURICH AMERICAN INSURANCE CO.,

                    Plaintiff,

        v.                                              CIVIL ACTION
                                                        NO. 17-1156
FTS USA, LLC,

                    Defendant.

## OPINION

**Slomsky, J.**                                          **July 17, 2018**

## I.    INTRODUCTION

The instant case is a declaratory judgment action brought pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201. (Doc. No. 1.) This case stems from an underlying action (the "Hays Litigation") in which a worker, Jeremy Hays, brought a workers' compensation complaint in Tennessee state court against CVRS Telecommunications, Inc. ("CVRS") and Comcast Corporation. (Id. at 2-3.) Hays filed the complaint after he was injured while installing cable in Tennessee, which CVRS had hired him to install. (Id.) Hays alleged in the workers' compensation complaint that CVRS and Comcast were his employers. (Id.)

To do the cable installation, Comcast had contracted with FTS USA, LLC ("FTS"). FTS in turn contracted with CVRS, which hired Hays to perform the installation. (Id.) After Hays filed his lawsuit against Comcast and CVRS, Comcast filed a Third-Party Complaint (TPC) against FTS seeking express indemnity for Hays's claim for workers' compensation against Comcast. (Id. at 3-4.) The TPC is the subject of the instant case and is based on the contract between Comcast and FTS. (Id.)

FTS is a named insured under a commercial general liability policy (the "CGL Policy") sold by Zurich American Insurance Company ("Zurich"), and a workers' compensation policy (the "Workers' Compensation Policy") sold by American Zurich Insurance Company (AZIC). (Id. ¶¶ 20-22.) The CGL Policy covers FTS's assumption of Comcast's liability for bodily injuries to third parties. The Workers' Compensation Policy covers workers' compensation damages imposed against FTS.

Plaintiff Zurich seeks a declaratory judgment that it owes no coverage to FTS under the CGL Policy. (Id.) FTS counterclaimed against Zurich and asserted claims against a third party, Defendant AZIC, based on the Workers' Compensation Policy. (Doc. No. 6.)

The CGL Policy contains a contractual liability exclusion, which is a provision that excludes certain damages FTS assumes in a contract or agreement, but the exclusion does not apply to what is described in the policy as an "insured contract." The indemnity agreement between Comcast and FTS is an "insured contract" if FTS assumed Comcast's "tort liability" under that agreement. The crux of this case therefore is whether the indemnity agreement between Comcast and FTS is an "insured contract," or to state it differently, whether the workers' compensation claim in the underlying Hays Litigation constitutes a "tort liability."[1]

Before the Court are cross-motions for judgment on the pleadings, one filed jointly by Zurich and AZIC (Doc. No. 19) and the other filed by FTS (Doc. No. 20). The motions are ripe for a decision.[2]

---

[1] Counsel for the parties agree that this is the issue in this case, as they confirmed at oral argument on the Motions for Judgment on the Pleadings. (Doc. No. 26 at 6:11-12 (statement of Marc J. Syken) ("[T]he real issue is whether there is an insured contract at issue."); id. at 14:19-20 (statement of Timothy P. Law) ("[T]his tort liability question . . . really is the—the key issue.").)

[2] In reaching a decision, the Court has considered Zurich and AZIC's Motion for Judgment on the Pleadings (Doc. No. 19), FTS's Motion for Partial Judgment on the Pleadings (Doc. No.

Because this Court will find, contrary to FTS's argument, that the contractual undertaking by FTS to defend Comcast against a workers' compensation claim does not fall within the definition of "tort liability" in the CGL Policy, this Policy does not provide coverage for FTS in the agreement with Comcast. Likewise, as will be discussed <u>infra</u> Section IV.B, because the Workers' Compensation Policy excludes coverage for liability assumed under contract, the Court will find that there is no coverage under that policy either.

## II. BACKGROUND

### A. The Commercial General Liability Policy

Zurich issued to FTS the CGL Policy, titled Commercial General Liability Insurance Policy GLO-0269604-00, for the period of July 1, 2011 to July 1, 2012, with a per occurrence limit of $1,750,000.[3] (Doc. No. 1 ¶¶ 20, 22.)

Pursuant to the terms of the CGL Policy, Zurich is required to pay, <u>inter alia</u>, "those sums that [FTS] becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies." (Doc. No. 1-8, Ex. D at 13.) The CGL Policy further provides that Zurich is obligated to "defend [FTS] against any 'suit' seeking those damages." (<u>Id.</u>)

---

20), FTS's Response to Zurich and AZIC's Motion (Doc. No. 21), their Response to FTS's Motion (Doc. No. 22) and the arguments made by counsel for the parties during the hearing on the motions (Doc. No. 24). Because Zurich and AZIC filed the motion jointly, for the sake of brevity this Opinion refers to their arguments as made by "Zurich" rather than "Zurich and AZIC."

[3] Zurich attached a copy of the CGL Policy to its Complaint as Exhibit D.

**B.     The Workers' Compensation Policy**

AZIC issued to FTS the Workers' Compensation Policy, titled Workers' Compensation and Employers Liability Insurance Policy WC 0269602-00, with a policy period from July 1, 2011 to July 1, 2012.[4]  FTS is a named insured under the Workers' Compensation Policy.

**C.     The Hays Litigation**

According to the Hays complaint, CVRS contracted with Comcast to provide individuals to install cable services for Comcast in Memphis, Tennessee.  (Id., Ex. A ¶ 13.)  Hays alleges that "[o]n or about the beginning of May 2012, [he] was sent to Memphis by Defendant CVRS to work for Defendant Comcast pursuant to the contract and/or agreement," and "Comcast became [his] employer, special employer, joint employer and/or statutory employer."  (Id., Ex. A ¶ 14.)  Hays seeks compensation benefits under the Tennessee Workers' Compensation Laws, Tenn. Code Ann. § 50-6-101, together with statutory penalties under that Act.  (Id., Ex. A. ¶¶ 28-29.)

On July 25, 2015, Comcast filed a Third-Party Complaint (TPC) against FTS in the Hays Litigation seeking "express indemnity" for Hays's claim against Comcast for workers' compensation benefits.[5]  The TPC is the subject of this coverage litigation.  It was based on a February 15, 2012 "Preferred Vendor Agreement for Broadband Installation/Disconnection /Construction" (the "Preferred Vendor Agreement") entered into by Comcast and FTS.[6]

In its TPC, Comcast claims that FTS agreed to defend and indemnify Comcast for Hays's workers' compensation benefits pursuant to the following contractual provision:

---

[4] A copy of the Workers' Compensation Policy is attached to Zurich's Motion for Judgment on the Pleadings as Exhibit E.

[5] Zurich attached a copy of the TPC to its Complaint as Exhibit B.

[6] The Preferred Vendor Agreement is attached to the Complaint as Exhibit C.

In addition to any other indemnification obligations under this Agreement, [FTS] shall indemnify and hold harmless, and at the company's election defend, [Comcast] from and against:

* * * *

(b) Any and all claims, judgments, liabilities, damages, expenses, fines, losses, demands, actions, lawsuits, executions and costs (including but not limited to attorneys' fees and court costs) in whole or in part arising out of or in connection with any of the following:

> (i) Performance of the Work by the Contractor or any one or more Sub-Contractors, or any agent, servant, employee or representative of the Contractor or any one or more Sub-Contractors;

* * * *

> (vi) Any injury, damage or loss to persons (including injury to the Contractor's employees and agents and the employees and agents of any one or more Sub-Contractors or material suppliers) or property, including without limitation, the Company's property, occurring during, arising from or arising in connection with: (A) the Work, including without limitation any defective, non-conforming or omitted Work; (B) the entry upon or possession of Work site by the Contractor or its Sub-Contractors; or (C) the acts or omissions of the Contractor, its Sub-Contractor or the agents, employees, or invitees of the Contractor or its Sub-Contractor or any other person for whom the Contractor or its Sub-Contractors is responsible. . . .

(Doc. No. 1, Ex. B ¶ 20 (quoting Section 16 of the Preferred Vendor Agreement).)

More specifically, in the TPC, Comcast alleges FTS had an "express contractual duty" to defend Comcast against Hays's workers' compensation claim:

> 27. Plaintiff [Hays] alleges injuries arising out of and occurring in the course and scope of employment, avers that Comcast is Plaintiff's employer, special employer, joint employer and/or statutory employer, and seeks judgment against Comcast pursuant to the Workers' Compensation Laws of Tennessee.

> 28. Pursuant to Tenn. Code Ann. § 50-6-211(b), nothing "shall prevent any agreement between the different employers between themselves as to the distribution of the ultimate burden of the compensation."

* * * *

> 30. Furthermore, Tennessee law does not preclude "third party indemnity actions against an employer who has expressly contracted to indemnify the third party." Tenn. Code Ann. § 50-6-108(c).

31. FTS has an express contractual duty to indemnify, hold harmless, and defend Comcast from and against all Plaintiff's [Hays's] claims.

(Id., Ex. B ¶¶ 27-31.)

On February 11, 2014, Comcast put FTS on notice of its claim for indemnity and tendered the Hays Litigation Complaint.  (Id., Ex. B ¶ 21.)  On September 28, 2016, FTS provided Zurich with notice of Comcast's claim against FTS, contending that Zurich is liable to defend it and pay any costs and damages that Comcast incurs in the suit brought by Hays.  (Id. at 11 ¶ 31.)  Following the tender, Zurich disclaimed any insuring obligation under its commercial general liability coverage, relative to the contractual indemnification claim for workers' compensation benefits asserted against FTS.  (Id. ¶ 32.)

On March 16, 2017, after FTS disputed Zurich's disclaimer, this ensuing action was initiated by Zurich.  (Id.)  On June 2, 2017, FTS filed an Answer and a Third-Party Complaint against AZIC, which had issued the Workers' Compensation Policy to FTS.  (Doc. No. 6.)  AZIC filed an Answer and Counterclaim against FTS on September 5, 2017, contending that its first party workers' compensation coverage was not implicated by Comcast's claim for express contractual indemnity from FTS.  (Doc. No. 17.)  Further, that the contractual indemnity claim against FTS was specifically excluded under the employer's liability coverage.  (Id.)

## III.    STANDARDS OF REVIEW

### A.    Standard to Resolve Motion for Judgment on the Pleadings

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings."  Fed. R. Civ. P. 12(c).  In deciding a motion for judgment on the pleadings, a court must consider only those documents contained in the pleadings.  See Moco Invs., Inc. v. United States, 362 F. App'x 305, 307 n.4 (3d Cir. 2010) (explaining that the district

court's consideration of documents outside the pleadings converted the motion for judgment on the pleadings into a motion for summary judgment).

A motion for judgment on the pleadings is analyzed under the same standard as a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6).  See Spruill v. Gillis, 372 F.3d 218, 223 n.2 (3d Cir. 2004) (explaining that "there is no material difference in the applicable legal standards" for Rule 12(b)(6) and Rule 12(c) motions).  Like a motion to dismiss, under Rule 12(c), "the trial court must view the facts in the pleadings in the light most favorable to plaintiff and must grant the motion only if the moving party establishes that no material issues of fact remains and that it is entitled to judgment as a matter of law."  Shelly v. Johns-Manville Corp., 798 F.2d 93, 97 n.4 (3d Cir. 1986); see also Rosenau v. Unifund Corp., 539 F.3d 218, 221 (3d Cir. 2008) (quoting Jablonski v. Pan Am. World Airways, Inc., 863 F.2d 289, 290 (3d Cir. 1988)). A motion for judgment on the pleadings will only be granted when "the plaintiffs would not be entitled to relief under any set of facts that could be proved."  Green v. Fund Asset Mgmt., L.P., 245 F.3d 214, 220 (3d Cir. 2001).

**B.      Standard Governing Insurance Policy Interpretation**

 In a diversity action, "the choice of law rules of the forum state [determine] which state's law will be applied."  Shuder v. McDonald's Corp., 859 F.2d 266, 269 (3d Cir. 1988). "Pennsylvania applies a 'flexible rule which permits analysis of the policies and interests underlying the particular issue before the court' and directs courts to apply the law of the state with the 'most interest in the problem.'"  Specialty Surfaces Int'l, Inc. v. Cont'l Cas. Co., 609 F.3d 223, 229 (3d Cir. 2010) (quoting Hammersmith v. TIG Ins. Co., 480 F.3d 220, 227 (3d Cir. 2007)).  The parties do not dispute that Pennsylvania law governs the interpretation of the CGL Policy and Workers' Compensation Policy.

Where the language of an insurance policy is "clear and unambiguous, a court is required to give effect to that language." Prudential Prop. & Cas. Ins. Co. v. Sartno, 903 A.2d 1170, 1174 (Pa. 2006) (citation omitted). "Where a provision of a policy is ambiguous, the policy provision is to be construed in favor of the insured and against the insurer, the drafter of the agreement." Id. (citation omitted).

## C. Standard Governing an Insurer's Duty to Defend

In Pennsylvania, an insurer's duty to defend is determined by comparing the allegations in the complaint with the relevant policy of insurance. Kvaerner Metals Div. v. Commercial Union Ins. Co., 908 A.2d 888, 896 (Pa. 2006) ("It is well established that an insurer's duties under an insurance policy are triggered by the language of the complaint against the insured."). "[A]n insurance company is obligated to defend an insured whenever the complaint filed by the injured party may potentially come within the policy's coverage." Pac. Indem. Co. v. Linn, 766 F.2d 754, 760 (3d Cir. 1985).

## IV. ANALYSIS

### A. Zurich Has No Duty to Defend FTS Against Comcast's TPC in the Hays Litigation

The CGL Policy provides commercial general liability coverage in accordance with the following insuring agreement:

SECTION I - COVERAGES
COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY

1. Insuring Agreement

> a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. . . .
>
>         \* \* \* \*
>
> b. This insurance applies to "bodily injury" and "property damage" only if:
>
> > (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";
> >
> > (2) The "bodily injury" or "property damage" occurs during the policy period[.]
>
>         \* \* \* \*

According to the above terms, the CGL Policy requires Zurich to pay sums that FTS "becomes legally obligated to pay" because of "bodily injury" caused by an "occurrence" that takes place during the policy period and in the "coverage territory." (Doc. No. 1-8, Ex. D at 13.)

The CGL Policy does not apply to contractual liability unless the insured would have such liability in the absence of a contract or agreement or the insured assumes such contractual liability in an "insured contract":

2. Exclusions

This insurance does not apply to:

        \* \* \* \*

b.  Contractual Liability

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

> (1) That the insured would have in the absence of the contract or agreement; or
>
> (2) Assumed in a contract or agreement that is an "insured contract" . . . .

(Id. at 14.)

The term "insured contract" is defined in the CGL Policy in relevant part as follows:

That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of a contract or agreement.

(Id. at 25.)

As FTS notes, the indemnity agreement between FTS and Comcast is an "insured contract" if FTS assumed Comcast's "tort liability" under that agreement. (Doc. No. 20 at 15 (citing Selective Ins. Co. v. Lower Providence Twp., No. 12-0800, 2013 WL 3213348, at *12 (E.D. Pa. June 26, 2013) (holding that an indemnification agreement was an "insured contract" where one party agreed to assume the tort liability for another party)).)

In Tennessee, workers' compensation benefits arise under Tennessee law. Tenn. Code Ann. § 50-6-108(a). Section 50-6-108(a) of the Tennessee Code Annotated states that "[t]he rights and remedies granted to an employee subject to this chapter, on account of personal injury or death by accident . . . shall exclude all other rights and remedies of the employee . . . at common law or otherwise, on account of the injury or death." Id.; see also Frayser v. Dentsply Int'l, Inc., 78 S.W.3d 242, 249 (Tenn. 2002) ("[Section 50-6-108(a) of the Tennessee Code Annotated] clearly expresses a legislative intent that any potential liability of the employer arising from 'injury or death' is abolished in favor of the remedy provided by worker's compensation.")).

FTS argues that coverage is available under the "insured contract" exception to the contractual liability exclusion. (Doc. No. 21 at 15.) It argues that since the term "tort liability" is defined in the CGL Policy, the policy definition applies rather than any other potential

meaning. (Doc. No. 21 at 16.) It notes that the broad definition is "not limited to causes of action that would be traditionally thought of as torts, but instead extends to all liabilities 'imposed by law' in the absence of contract, which would include statutory liabilities." (Id. at 16-17.)

Zurich argues that the indemnity agreement between Comcast and FTS is not an "insured contract" because it allegedly creates a defense and indemnity obligation for workers' compensation claims and such claims do not involve "tort liability." (Id.) Zurich submits that FTS's position that the "insured contract" exception provides an avenue to coverage for workers' compensation exposure has been addressed and rejected repeatedly. (Id.) It relies on the following cases, all of which are unreported district court decisions from other jurisdictions. Woodcraft Mfg., Inc. v. Charter Oak Fire Ins. Co., No. 3:08cv455/MCR/EMT, 2009 WL 1329138 (N.D. Fla. May 12, 2009); Am. Emp'rs' Ins. Co. v. DynMcDermott Petroleum, Operations Co., No. H-07-03524, 2009 WL 814124 (S.D. Tex. Mar. 25, 2009); QBE Ins. Corp. v. Indus. Corrosion Control, Inc., No. 1:07cv35-LG-JMR, 2008 WL 1868431 (S.D. Miss. Apr. 24, 2008); Forest Oil Corp. v. Ace Indem. Ins. Co., No. Civ. A. 04-0435, 2004 WL 2347561 (E.D. La. Oct. 15, 2004).

In the earliest case, Forest Oil, the Eastern District of Louisiana sought to determine whether an obligation owed to the injured employee fell within the insured contract exception. 2004 WL 2347561, at *2. The court quoted the definition of "tort liability," which was defined within the definition of "insured contract" in the policy at issue. Id. The definition of "tort liability" in that policy mirrored the one in the policy at issue in this case. Id. The Forest Oil court found tort law to be distinct from workers' compensation law. Id. Therefore, because the obligation that was owed to the injured employee subsisted under workers' compensation law

only and not under a theory of tort liability, the court concluded that it did not stem from an "insured contract." Id. at *3-4.

QBE Insurance followed Forest Oil. QBE Ins., 2008 WL 1868431, at *2. In that case, Roy Anderson Construction (RAC), a general contractor for a construction project, executed a contract with Industrial Corrosion Control, Inc. (ICCI) that required ICCI to indemnify RAC for any injuries caused by ICCI or its subcontractors. Id. One of ICCI's subcontractors negligently injured a RAC employee, and RAC paid workers' compensation benefits to that employee. Id. In RAC's underlying contractual indemnity suit to recoup the workers' compensation payments from ICCI, the court determined that the contract required ICCI to indemnify RAC for workers' compensation payments made to the injured RAC employee. Id. At issue then was whether ICCI's business auto insurer, QBE Insurance, was required to reimburse ICCI for the amounts that ICCI was obligated to pay due to its contractual indemnity obligation. Id. The court found that the "insured contract" exception to the contractual liability exclusion did not apply to a contractual claim to recoup workers' compensation benefits, as such benefits did not involve tort liability. Id. at *2. In its opinion, the Southern District of Mississippi cited the definition of "tort liability" in the policy at issue, which also mirrored the definition of "tort liability" in the policy in this case. Id.

Zurich also cites American Employers' Insurance, which was decided the next year. 2009 WL 814124. The Southern District of Texas found that under Texas law, a tort exception to a business auto insurance policy exclusion for contractually assumed liabilities did not apply. Id. at *11. The court reasoned that the tort exception did not apply because payments made to an insured's worker by a third party arose out of workers' compensation laws and not tort liability.

Id.  Thus, the insurer was not required to pay the balance owing on a third party's judgment against the insured.  Id.

Notably as it relates to the instant dispute, the <u>American Employers' Insurance</u> court applied Texas law, under which the workers' compensation scheme is contractual.  This is unlike the scheme in Tennessee, where the accident that gave rise to claims in this case occurred.

The last case Zurich cites to support its position that an indemnity agreement that is alleged to give rise to a defense and indemnity obligation relative to a workers' compensation claim is not an "insured contract" is <u>Woodcraft Manufacturing</u>.  2009 WL 1329138.  In this case, the Northern District of Florida addressed the meaning of an "insured contract" in the context of an exception to the employer's liability exclusion.  Id.

The Plaintiff Woodcraft Manufacturing ("Woodcraft") was sued by Caddell Construction Company ("Caddell") after Gary Slone, a woodcraft employee who suffered a stroke on the job, won a judgment against both companies for workers' compensation benefits in Tennessee state court, where the accident occurred.  Id. at *1-2.  Caddell sued to recover damages it was required to pay to Slone based on Woodcraft's failure to maintain workers' compensation insurance coverage while performing work as a subcontractor for Caddell.  Id.  Woodcraft sued its commercial general liability carrier, Charter Oak, for coverage, claiming that Charter Oak breached a duty to defend and indemnify Woodcraft under the "insured contract" exception.  Id. at *4.  The court disagreed, holding that an obligation to pay workers' compensation benefits is not a tort liability:

> The court rejects Woodcraft's <u>tortured reading of both Section V(8)(f) of the liability policy</u> and Article XII(a) of the subcontract.  First, as noted above, Section V(8)(f) of the policy between Woodcraft and Charter Oak defined an "insured contract" as one in which Woodcraft agreed to "assume the tort liability of another party to pay for 'bodily injury' . . . to a third person . . . ."  <u>Workers' compensation payments, however, lie outside the tort system as a matter of law</u>.

13

When Woodcraft and Charter Oak agreed in Section V(8)(f) of the commercial liability policy that Woodcraft's assumption of "tort liabilities" in another contract would be exempted from the "employer's liability" exclusion, they could not have been agreeing to include Woodcraft's obligation to indemnify a third party for payment of workers' compensation benefits to one of Woodcraft's employees because such benefits are not the result of tort liabilities. Moreover, accepting Woodcraft's argument, the employer's liability exclusion would essentially be read out of the liability policy, and Charter Oak would be liable for all workers' compensation claims made by Woodcraft's employees despite the exclusion of such claims in Section I(A)(2)(d) of the liability policy. Insurance contracts should be read as a whole in an effort to give meaning to all provisions, including the policy's exclusions.

Id. at *4-5 (emphasis added) (footnotes omitted) (citation omitted). The Woodcraft Manufacturing court cited precedent from Tennessee, where Hays's accident in this case occurred, for the proposition that the laws of Tennessee preclude tort claims when workers' compensation laws apply. Id. at *5 n.11 (citing Valencia v. Freeland & Lemm Constr. Co., 108 S.W.3d 239, 242-43 (Tenn. 2003) (holding that tort claims against an employer that arise out of work-related injuries are barred under Tenn. Code Ann. § 50-6-108(a) unless the employer committed an intentional tort against the employee)).

FTS asserts that none of these cases should be followed. (Doc. No. 21 at 18.) It points out initially that the cases are not binding on this court, as they were decided by district courts from other jurisdictions and did not apply Pennsylvania law. (Id.) Moreover, it argues, while some of the cases quote the definition of tort liability contained in the policy, none of the cases analyzed the definition or applied it. (Id.) Rather than apply the definition of tort liability contained in the policy, FTS argues, those cases applied a common law definition. (Id.) Doing so conflicts with the correct analytical approach under Pennsylvania law taken by Continental Insurance Co. v. McKain, 820 F. Supp. 890, 895 (E.D. Pa. 1993). As the court recognized in Continental Insurance, "common law meanings do not apply were the term is clearly defined in a way that differs from the common law meaning." Id.

FTS further argues that Zurich's precedent conflicts with the Pennsylvania insurance law precept that ambiguities are to be resolved in favor of coverage for the policyholder. (Doc. No. 21 at 19.) Thus, if the Court finds more than one reasonable interpretation of "tort liability" as defined in the CGL Policy, then the interpretation proffered by FTS must be adopted. (Id. (citing Prudential Prop. & Cas. Ins. Co. v. Sartno, 903 A.2d 1170, 1177 (Pa. 2006) ("Regardless of which [interpretation] is 'right' or 'wrong,' the fact is that because each interpretation is reasonable, the exclusionary term is ambiguous, and we must construe it in favor of the insured.")).)

Despite FTS's arguments, its reading that a workers' compensation claim falls within the definition of "tort liability" in the CGL Policy is inconsistent with Tennessee law, which immunizes entities that are liable for Tennessee workers' compensation benefits from tort liability. Troup v. Fischer Steel Corp., 236 S.W.3d 143, 148 (Tenn. 2007) ("In exchange for this exposure to liability under the Workers' Compensation Law, Belz receives immunity from suit in tort." (citing Tenn. Code Ann. § 50-6-108)); see also Fayette Janitorial Servs. & Tech. Ins. Co. v. Kellogg USA, Inc., No. W2011-01759-COA-R3-CV, 2013 WL 428647, at *4 (Tenn. App. 2013) ("In exchange for the principal contractor's exposure to liability under the Workers' Compensation Law, the principal contractor receives immunity from suit in tort."). Thus, because, as the court in Woodcraft Manufacturing noted, workers' compensation payments lie outside the tort system as a matter of law, the Court rejects FTS's reading of the policy.

For these reasons, Zurich has no duty to defend FTS against Comcast's TPC in the Hays Litigation.

**B.    AZIC Has No Duty to Defend FTS Against Comcast's TPC in the Hays Litigation**

AZIC's Part One Workers' Compensation coverage applies to first-party claims brought by an injured worker against the worker's employer.  It does not apply to third-party claims.  See Cincinnati Ins. Co. v. Gray, No. 1:08-cv-1694-TWP-TAB, 2010 WL 3522954, at *5 (S.D. Ind. Sept. 1, 2010) ("Part One of the Worker's Compensation policy addresses All-One's liability to its own employees.  Part Two of that policy addresses All-One's liability to third-parties. . . .").  Because the Hays complaint did not name FTS as an employer, Part One does not apply here.

Unlike the Part One workers' compensation coverage, the Part Two Employers' Liability does provide a third-party with coverage:

> PART TWO
> EMPLOYERS LIABILITY INSURANCE
>
> * * * *
>
> B. We Will Pay
>
> We will pay all sums that you legally must pay as damages because of bodily injury to your employees,[7] provided the bodily injury is covered by this Employers Liability Insurance.
>
> The damages we will pay, where recovery is permitted by law, include damages:
>
> 1. For which you are liable to a third party by reason of a claim or suit against you by that third party to recover the damages claimed against such third party as a result of injury to your employee.
>
> * * * *

AZIC WC Policy Form (WC 00 00 00 B (07/11)) at Part Two ¶¶ A., B.

---

[7]  As Zurich notes, presently, coverage under the third-party grant could not apply as there is no claim by Hays that FTS was his employer.  As the parties noted at the hearing before the Court, there is a pending motion by Hays to amend his complaint to include a workers' compensation claim directly against FTS.  (Doc. No 19 at 25 n.10.)

Under Part Two of the Workers' Compensation Policy, coverage is expressly excluded for liability assumed under a contract:

C. Exclusions

This insurance does not cover:

1. <u>Liability assumed under a contract</u>. This exclusion does not apply to a warranty that your work will be done in a workmanlike manner;

\* \* \* \*

4. Any obligation imposed by a workers compensation, occupational disease, unemployment compensation, or disability benefits law, or any similar law;

\* \* \* \*

AZIC WC Policy Form (WC 00 00 00 B (07/11)) at Part Two at C ¶¶ 1., 4.

The exclusion for liability assumed under a contract is routinely enforced. In <u>Beacon Mutual Insurance Co. v. Spino Brothers, Inc.</u>, 11 A.3d 645 (R.I. 2011), the Supreme Court of Rhode Island held there was no coverage given the exclusion for "liability assumed under a contract":

> Part Two of the policy entitled "Employers' Liability Insurance" is divided into eight subsections; the exclusions portion specifically declares that the policy does not cover "liability assumed under a contract." This provision is unambiguous. After reading the policy as a whole and according the language its ordinary meaning, it is clear to us that Beacon's responsibility under the insurance contract does not include liability arising from a contract between its insured and a third party. Thus, because Spino Bros.' liability to DePasquale exclusively stemmed from the contract executed between them . . . , and coverage for that eventuality specifically is excluded from the insurance policy, Beacon was entitled to a declaration to that effect.

<u>Beacon Mut. Ins. Co.</u>, 11 A.3d at 650; <u>see also</u> <u>Preserver Ins. Co. v. Ryba</u>, 893 N.E.2d 97, 101 (N.Y. 2008) ("[S]ince the policy explicitly excludes coverage for any liability assumed under a contract, Preserver must neither defend nor indemnify East Coast Stucco for the contractual indemnification or breach of contract causes of action.").

Consistent with the case law cited above, Zurich argues that the Part Two employers' liability coverage does not apply to the TPC, as coverage is expressly excluded for liability assumed under a contract. (Doc. No. 22 at 20.) FTS argues that AZIC owes a duty to defend because the TPC creates the potential for coverage under the Workers' Compensation Policy for the accidental bodily injury of Hays, given that Comcast's allegations within the TPC could be broadly construed to allege that FTS was "an employer" or one of several "different employers" of Hays. (Doc. No. 20 at 19; Doc. No. 1, Ex. B ¶¶ 28-31.) It asserts that this is sufficient to trigger AZIC's duty to defend.

An insurance company's duty to defend is distinct from, and broader than, its duty to indemnify. See Gen. Accident Ins. Co. of Am. v. Allen, 692 A.2d 1089, 1095 (Pa. 1997). In Pennsylvania, an insurance company's defense obligation is determined solely by the allegations of the underlying complaint. See id. at 1095. The insurance company is required to defend if, in comparing the four corners of the complaint to the four corners of the insurance policy, the complaint may potentially come within the coverage of the policy. See Pac. Indem. Co. v. Linn, 766 F.2d 754, 760 (3d Cir. 1985) ("Under Pennsylvania law, an insurance company is obligated to defend an insured whenever the complaint filed by the injured party may potentially come within the policy's coverage."). If there is any doubt as to whether the facts establish the existence of a duty to defend, they must be resolved in favor of the policyholder. See Biborosch v. Transamerica Ins. Co., 603 A.2d 1050, 1052 (Pa. Super. Ct. 1992).

FTS further argues that since Zurich took the position in its Complaint that the allegations within the Hays Litigation trigger the Workers' Compensation and Similar Laws exclusion in the

CGL Policy, it admits the potential for coverage under the Workers' Compensation Policy.[8] (Doc. No. 20 at 20 (citing <u>Barrett v. N.J. Mfrs. Ins. Co.</u>, 685 A.2d 975, 977 (N.J. App. Div. 1996) ("An insurance company which expressly or impliedly acknowledges that its policy provides coverage for a particular claim may be estopped from subsequently denying coverage if an insured has relied upon the availability of that coverage."); <u>Tomerlin v. Canadian Indem. Co.</u>, 394 P.2d 571, 576-78 (Ca. 1964) (holding that a liability insurance company's admission of coverage binds the insurance company to pay a judgment or settlement against the policyholder)).)

Here, the Part Two coverage grant expressly excludes "liability assumed under a contract." The TPC avers that "FTS has an express contractual duty to indemnify, hold harmless, and defend Comcast from and against all Plaintiff's [Hays's] claims." (Doc. No. 1, Ex. B ¶ 31.) This averment refers to "an express contractual duty" to defend, and therefore triggers the exclusion for liability assumed in a contract. Other courts have enforced this exclusion. <u>Beacon Mut. Ins. Co. v. Spino Bros., Inc.</u>, 11 A.3d 645 (R.I. 2011); <u>Preserver Ins. Co. v. Ryba</u>, 893 N.E.2d 97, 101 (N.Y. 2008). Therefore, despite FTS's arguments, the claim at issue is outside the Part Two grant of coverage. Since the claim at issue also is outside the Part One first-party grant of coverage, the Court finds that AZIC has no duty to defend FTS.

### C. FTS's Bad Faith Claim Is Meritless

FTS's Counterclaim against Zurich includes a Count for Statutory Bad Faith. (Doc. No. 6 at 20.) To succeed on a bad faith claim, a plaintiff must show: "(1) that the insurer lacked a reasonable basis for denying benefits; and (2) that the insurer knew or recklessly disregarded its

---

[8] In its Complaint, Zurich asserts that "[c]overage under the [CGL] Policy is . . . barred by application of the Workers' Compensation and Similar Laws exclusion." (Doc. No. 1 ¶ 43(h).)

lack of reasonable basis." <u>Verdetto v. State Farm Fire & Cas. Co.</u>, 837 F. Supp. 2d 480, 484 (M.D. Pa. 2011) (quoting <u>Klinger v. State Farm Mut. Auto. Ins. Co.</u>, 115 F.3d 230, 233 (3d Cir. 1997)); <u>see also</u> <u>Rancosky v. Wash. Nat'l Ins. Co.</u>, 170 A.3d 364, 365 (Pa. 2017) (adopting the two-pronged test above and holding that self-interest or ill will "is not a prerequisite to prevailing in a bad faith claim under Section 8371"). The insured must meet its burden of proving bad faith by clear and convincing evidence. <u>Nw. Mut. Life Ins. Co. v. Babayon</u>, 430 F.3d 121, 137 (3d Cir. 2005). As noted, mere negligence is not bad faith. <u>Id.</u>

Zurich argues that FTS's Bad Faith claim is meritless because Zurich's coverage position was reasonable and consistent with the decisions that have decided the issue.[9] (Doc. No. 19 at 27-28.) FTS argues that the Zurich's decision to deny benefits under the CGL Policy was in bad faith because it was not reasonable for Zurich to ignore the definition of "tort liability" in the CGL Policy. (Doc. No. 21 at 22.) Further, it argues that Zurich took contradictory positions when it denied coverage under the CGL Policy, arguing that FTS was an employer of Hays, and at the same time denied coverage under the Workers' Compensation Policy, arguing that FTS was not an employer of Hays. (<u>Id.</u> at 23.)

The Court agrees with Zurich that it had a reasonable basis to deny coverage under the CGL Policy, evidenced by the fact that its position was consistent with case law on the issue. Regarding FTS's assertion that Zurich took contradictory positions in denying coverage under both policies, the Court is not persuaded by this argument. Zurich did not deny coverage under the CGL Policy because it believed FTS was Hays's employer, but rather because it believed

---

[9] <u>Woodcraft Mfg., Inc. v. Charter Oak Fire Ins. Co.</u>, No. 3:08cv455/MCR/EMT, 2009 WL 1329138 (N.D. Fla. May 12, 2009); <u>Am. Emp'rs' Ins. Co. v. DynMcDermott Petroleum, Operations Co.</u>, No. H-07-03524, 2009 WL 814124 (S.D. Tex. Mar. 25, 2009); <u>QBE Ins. Corp. v. Indus. Corrosion Control, Inc.</u>, No. 1:07cv35-LG-JMR, 2008 WL 1868431 (S.D. Miss. Apr. 24, 2008); <u>Forest Oil Corp. v. Ace Indem. Ins. Co.</u>, No. Civ. A. 04-0435, 2004 WL 2347561 (E.D. La. Oct. 15, 2004).

Hays's claim for workers' compensation benefits did not implicate a tort liability. As noted above, this position is reasonable and consistent with the case law on the issue.

For these reasons, the Court will find that FTS's Bad Faith claim is meritless.

**V.      CONCLUSION**

For the foregoing reasons, the Court will enter judgment declaring that Zurich has no duty to defend or indemnify FTS based on the TPC brought by Comcast in the Hays Litigation. The Court also will enter judgment declaring that AZIC has no duty to defend or indemnify FTS for the TPC brought by Comcast in the Hays Litigation. Furthermore, FTS's claim of Bad Faith fails as a matter of law. An appropriate Order follows.